UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GEORGE KAYODE GANSAH, | ) | 1:07-CV-01006 AWI GSA HC |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| | ) | |
| ALBERTO GONZALES, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**INTRODUCTION AND PROCEDURAL SUMMARY**

Petitioner is being detained by the United States Bureau of Immigration and Customs Enforcement ("ICE") pending removal from the United States. Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

In the petition filed on July 16, 2007, Petitioner claims Respondent lacks the statutory authority to indefinitely detain him. He also contends that his indefinite detention violates his substantive and procedural due process rights guaranteed under the United States Constitution. He further contends that Respondent's current detention of Petitioner is punitive in nature and constitutes punishment without due process of law.

On September 12, 2007, Respondent filed an answer to the petition. Petitioner filed a traverse on September 26, 2007. On November 29, 2007, the undersigned issued a Findings and Recommendation which recommended the petition be denied. Petitioner filed objections on December 14, 2007. In light of his objections, the undersigned withdrew the Findings and Recommendation and directed Respondent to expand the record. On January 29, 2008, Respondent submitted a copy of Petitioner's Alien File ("A-File"). Petitioner filed a reply to Respondent's submission on February 8, 2008.

**FACTUAL BACKGROUND**

Petitioner is a native and citizen of Nigeria. See Petition at 3. On June 9, 1985, Petitioner was admitted to the United States at New York City. A-File at 84. After sustaining certain convictions, on June 10, 2001, Petitioner was ordered removed to Nigeria by an Immigration Judge. Id. Petitioner did not appeal the order; he is currently subject to a final order of removal. Id.

On November 17, 2001, Petitioner was released from custody on orders of supervision and bond. A-File at 14, 84. He failed to report pursuant to the order of supervision. A-File at 84. On February 29, 2005, Petitioner was located in the San Francisco County Jail for parole violation and sale of cocaine base. Id. His release was revoked and he was taken into ICE custody. On August 29, 2006, Petitioner posted bond and was released on another order of supervision. Id. On October 5, 2006, Petitioner was located again after he violated parole on a felony conviction. See Answer at 2. Petitioner was returned to ICE custody on April 4, 2007, after he had served his sentence. On July 5, 2007, ICE determined Petitioner would continue to be held in detention pending removal. See Exhibit A, Answer. Petitioner has been in custody since then.

**DISCUSSION**

I.  Jurisdiction.

Habeas corpus relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). Habeas corpus proceedings pursuant to § 2241 remain available as a forum for statutory and constitutional challenges to the authority of the Attorney General to order post-removal-period detention; in such a proceeding, the petitioner is not seeking review of the Attorney General's exercise of discretion, but

1  rather is challenging the extent of the authority to detain under the statute, which is not a matter of
2  discretion. <u>Zadvydas v. Davis</u>, 533 U.S. 678, 688 (2001); <u>Magana Pizano v. Immigration and</u>
3  <u>Naturalization Service</u>, 200 F.3d 603, 608-09 (9th Cir. 1999). Accordingly, the Court has subject
4  matter jurisdiction over this action.

5         With respect to jurisdiction over the person, 28 U.S.C. § 2241(a) provides that writs of
6  habeas corpus may be granted by the district courts "within their respective jurisdictions." A writ of
7  habeas corpus operates not upon the prisoner, but upon the prisoner's custodian. <u>Braden v. 30th</u>
8  <u>Judicial Circuit Court of Kentucky</u>, 410 U.S. 484, 494-495 (1973). A petitioner filing a petition for
9  writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the
10  petitioner's custodian. <u>Brown v. United States</u>, 610 F.2d 672, 677 (9th Cir. 1990). It is sufficient if
11  the custodian is within the territorial jurisdiction of the court at the time the petition is filed; transfer
12  of the petitioner thereafter does not defeat personal jurisdiction that has once been properly
13  established. <u>Ahrens v. Clark</u>, 335 U.S. 188, 193 (1948), overruled on other grounds in <u>Braden v. 30th</u>
14  <u>Judicial Circuit Court of Kentucky</u>, 410 U.S. at 193, citing <u>Mitsuye Endo</u>, 323 U.S. 283, 305 (1944);
15  <u>Francis v. Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990).

16         Review of the petition shows that Petitioner is detained at the Lerdo Pretrial Facility in
17  Bakersfield, California. Bakersfield is within the territorial jurisdiction of this Court.
18  <u>II.  Exhaustion of Administrative Remedies</u>.

19         Exhaustion of administrative remedies before seeking relief from the federal courts is
20  required where Congress specifically mandates it; however, when Congress has not clearly required
21  exhaustion, the necessity of exhaustion is entrusted to sound judicial discretion. <u>McCarthy v.</u>
22  <u>Madigan</u>, 503 U.S. 140, 144 (1992) (holding exhaustion of a prison grievance procedure unnecessary
23  before a federal prisoner brought a Bivens action seeking only monetary damages, superseded by
24  statutory amendment as noted in <u>Booth v. Churner</u>, 532 U.S. 731, 738 (2001)). Even if exhaustion is
25  not mandated, judicially fashioned principles of exhaustion should be consistent with congressional
26  intent and the applicable statutory scheme. <u>McCarthy v. Madigan</u>, 503 U.S. at 144.

27         In determining whether to excuse exhaustion, the Court should consider the claim asserted,
28  the agency's interest in resolving the issue, and the administrative procedure provided. <u>McCarthy</u>,

1  503 U.S. at 146; Morrison-Knudsen Co. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir.1987).  In
2  cases concerning immigration proceedings, the Ninth Circuit has found that due process claims may
3  be exempted from the exhaustion requirement if they involve more than a mere procedural error that
4  the administrative tribunal can easily remedy.  See Bagues-Valles v. Immigration and Naturalization
5  Service, 779 F.2d 483, 484 (9th Cir.1985) (exempting from exhaustion requirement Petitioner's claim
6  that BIA's retroactive interpretation of "continuous presence rule" violated due process).

7       The Court will excuse exhaustion in the instant case.  There does not appear to be any statute
8  embodying Congressional intent to require exhaustion in this instance.  Moreover,  Petitioner's
9  claims concern issues that are collateral to ICE's decision to remove Petitioner.  It is doubtful the
10 issues raised by Petitioner would be addressed in the course of the administrative process.  As is
11 more fully discussed below, in this proceeding the Court must determine the authority of ICE to
12 detain Petitioner, and, in doing so, it thereby largely determines the constitutionality of Petitioner's
13 detention.  The Court is mindful of the importance of deference to executive expertise on questions
14 such as immigration, the status of repatriation agreements, and the likelihood of issuance of travel
15 documents in a particular case. Zadvydas, 533 U.S. at 700.

16     However, the Court exercises its discretion to decline to require Petitioner to resort to
17 administrative remedies and thereby to surrender an imminent judicial remedy.  At the time the
18 petition was filed in this Court, no meaningful administrative remedy existed.  Therefore, the Court
19 will excuse exhaustion.

20 III.  Authority to Detain Petitioner.

21     Title 8 U.S.C. § 1231(a)(1) provides generally that except as otherwise provided in that
22 section, when an alien is ordered removed, the Attorney General shall remove the alien from the
23 United States within a period of ninety days, the "removal period." Title 8 U.S.C. § 1231(a)(6)
24 provides:

25   An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of
26   this title or who has been determined by the Attorney General to be risk to the community or unlikely to comply with the order of removal, may be
27   detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).
28

In addition to those aliens found to be risks to the community or unlikely to comply with the order of removal, aliens subject to this detention provision include inadmissible aliens, criminal aliens, aliens who have violated their non-immigrant status conditions, and aliens removable for certain national security or foreign relations reasons. Zadvydas v. Davis, 533 U.S. at 688.

In Zadvydas v. Davis, in order to avoid serious doubts as to the constitutionality of § 1231(a)(6), the Court interpreted it not to permit indefinite detention, but rather to limit an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. Id. at 688-89. The Court determined that aliens who had been ordered removed had a liberty interest in being released subject to supervision which was strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent. Id. at 696. Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute. Id. at 699. The authority of the government to detain is thus coextensive with the reasonable likelihood of removal, and the question of the extent of that authority is for the federal judiciary to decide in proceedings pursuant to 28 U.S.C. § 2241(c)(3). Id. With respect to the process of decision that this Court is to follow, the Court instructed:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. See supra, at 2501 (citing 8 U.S.C. §§ 1231(a)(3), 1253 (1994 ed., Supp. V); 8 C.F.R. § 241.5 (2001)). And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period. See supra, at 2499.
>
> We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. (Citation omitted.) But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

> Ordinary principles of judicial review in this area recognize primary Executive Branch responsibility. They counsel judges to give expert agencies decisionmaking leeway in matters that invoke their expertise. See Pension Benefit Guaranty Corporation v. LTV Corp., 496 U.S. 633, 651-652, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990). They recognize Executive Branch primacy in foreign policy matters. See Container Corp. of America v. Franchise Tax Bd., 463 U.S. 159, 196, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983). And they consequently require courts to listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise.

Id. at 699-700.

In order to further uniform administration in the federal courts and to limit the frequency with which courts would be faced with difficult judgments regarding matters which are the subject of executive expertise, the Court adopted six months as a period within which detention is presumptively reasonable. Id. at 701. The Court instructed:

> After this [six]-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This [six]-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id.

IV.  Suspension of Removal Period.

Respondent argues that continued detention is not indefinite because there is a significant likelihood of removal in the reasonably foreseeable future. Respondent further argues the removal period should be suspended because Petitioner has not cooperated with the government's attempts to secure travel documents, but has acted to thwart those attempts. Respondent's arguments are persuasive.

8 U.S.C. § 1231(a)(1)(C) provides:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

In this case, Petitioner has failed to cooperate with the government in good faith to obtain travel documents. As a condition of the order of supervision following Petitioner's last release, Petitioner failed to report once a month as required to assist ICE in obtaining identity and travel documents. A-File at 78. He also failed to abide by the conditions of parole. Id. More importantly, Petitioner has acted to thwart ICE's attempts at removal. On November 3, 2005, a new travel document request was made to the Nigerian Embassy. A-File at 211. Copies of Petitioner's father's and uncle's Nigerian passports were included. Id. On December 27, 2005, Petitioner was selected as a candidate for the January 25, 2006, charter flight to Nigeria. Id. On January 12, 2006, Petitioner was interviewed by the Nigerian Consulate, whereupon Petitioner advised the consulate that they could not issue a travel document because Petitioner and his family were from Ghana. Id. The consulate determined it could not issue documents based on this representation. Id.

Petitioner's actions clearly demonstrate a proven method for thwarting ICE's several attempts at removal. Each time ICE begins the removal process and attempts removal to Nigeria, Petitioner claims Ghanaian citizenship. Although all documentation shows Petitioner is a native and citizen of Nigeria (Petitioner's passport is from Nigeria, he entered from Nigeria, his father's passport is from Nigeria, and his uncle's passport is from Nigeria), Petitioner knows he only has to claim Ghanaian citizenship to thwart removal. Then when similar attempts are then made to Ghana to secure documents, they likewise prove fruitless. After each removal is thwarted, Petitioner is released on an order of supervision, whereupon he either commits another crime, violates a condition of parole, and/or violates a condition of release, and then, the process begins anew. Therefore, it is clear Petitioner has failed to cooperate and indeed has acted to prevent his removal. Pursuant to § 1231(a)(1)(C), the removal period must be suspended.

In addition, there appears to be a significant likelihood of Petitioner's removal to Nigeria in the reasonably foreseeable future. The Nigerian Embassy has cooperated with ICE's attempts to remove Petitioner and would have repatriated Petitioner by now if he had cooperated. As noted above, removal was virtually certain at one point with a charter flight scheduled to depart until efforts were frustrated by Petitioner. Petitioner holds the proverbial key to release in his pocket. If he would cooperate with ICE and not act to thwart ICE's attempts, he would promptly be returned to

Nigeria. See Parra v. Perryman, 172 F.3d 954, 958 (7th Cir.1999)

Accordingly, the petition should be denied without prejudice, because Petitioner's current detention is lawful and authorized under 8 U.S.C. § 1231(a)(1)(B-C). In the event that Petitioner cooperates with ICE and removal is still not effected within the near future, Petitioner should be allowed to file another habeas petition challenging his indefinite detention.

**RECOMMENDATION**

The Court hereby RECOMMENDS that the petition for writ of habeas corpus be DENIED without prejudice and the Clerk of Court be DIRECTED to enter judgment.

These Findings and Recommendations are submitted to the Honorable Anthony W. Ishii, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 14, 2008**           /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE